IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 15-mj-01100-MEH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MELANIE PALUMBO,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Martha A. Paluch, Assistant United States Attorney for the District of Colorado, and the Defendant, Melanie Palumbo, personally and by counsel, Paula M. Ray, hereby submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I.    PLEA AGREEMENT

The defendant agrees to plead guilty to an Information charging a violation of 26 U.S.C. § 7207, Submission of a Fraudulent Tax Return. The parties agree that the defendant should be ordered to pay restitution to the Internal Revenue Service (IRS) in the amount of $13,541.49. This amount represents the actual loss to the IRS for the false tax returns in which the defendant is implicated which were submitted to the IRS in connection with the tax fraud scheme charged in *United States v. Caraveo,* et al., 15-cr-00149-JLK.

(*Caraveo* case).

The defendant agrees to testify as requested by the United States Attorney's Office for the District of Colorado ("the government") at any hearing or trial held pertaining to the defendants currently, or subsequently, charged in the *Caraveo* case.

The defendant also agrees that she knowingly and voluntarily waives any challenge to this charge based upon the statute of limitations.

In exchange, the government agrees to not file any additional charges against the defendant based on the information presently known to the government.

Provided the defendant does nothing inconsistent with accepting responsibility between the date of her plea and the date of sentencing, the government will recommend that the defendant receive the maximum reduction for acceptance of responsibility.

The government agrees to consider the extent of the defendant's assistance in the *Caraveo* case in deciding whether to file a motion for a reduced sentence pursuant to U.S.S.G. § 5K1.1.

If the government does not file a § 5K1.1 motion, it agrees that at sentencing, it will argue for a sentence at the bottom of the applicable guideline range.  The defendant is free to recommend to the sentencing court a variant sentence below the applicable guideline range.

The parties agree, and request of this Court, that her sentencing hearing not be scheduled until conclusion of all proceedings in the *Caraveo* case.

This agreement is submitted to the Court for its consideration pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure.

The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence imposed is above the maximum penalty provided in the statute(s) of conviction; (2) the Court, after determining the otherwise applicable sentencing guideline range, either departs or varies upwardly; or (3) the Court determines that the total offense level is higher than 10 and imposes a sentence above the sentencing guideline range calculated for that total offense level. Except as provided above, the defendant also knowingly and voluntarily waives the right to appeal the manner in which the sentence is determined on grounds set forth in 18 U.S.C. § 3742. The defendant also knowingly and voluntarily waives her right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision, however, will not prevent the defendant from seeking relief otherwise available if: (1) there is an explicitly retroactive change in the applicable guidelines or sentencing statute, (2) there is a claim that the defendant was denied the effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct. Additionally, if the government appeals the sentence imposed by the Court, the defendant is released from this waiver provision.

## II. ELEMENTS OF THE OFFENSES

In order to be convicted of a violation of 26 U.S.C. § 7207, Submitting a Fraudulent Tax Return, the following elements would have to be proven by the government beyond a reasonable doubt:

*First:* the defendant willfully;

*Second:* filed a return or other document with the Secretary of the Treasury;

*Third:* known by her to be false or fraudulent in any material manner.

See *Sansone v. United States,* 380 U.S. 343, 352 (1965); *United States v. Parsons,* 967 F.2d 452, 456 (10th Cir. 1992); *United States v. Keckler,* No. 92-4674, 1993 WL 67173, at *3 (5th Cir. Mar. 4, 1993); *United States v. Spencer,* No. 87-6200, 1988 WL 87679, at *2 (6th Cir. Aug. 25, 1988).

## III. STATUTORY PENALTIES

The maximum statutory penalty for a conviction of 26 U.S.C. § 7207 is as follows: not more than 1 year of imprisonment; a fine of not more than $100,000.00, or both; not more than 1 year of supervised release; and a $25.00 special assessment fee. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may further cause the loss of certain civil rights, including, but not limited to, the right to possess a firearm, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below.

-4-

Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offenses of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began was in April 2008.

The parties agree that the government's evidence would be as follows:

In April of 2008, Raul Caraveo was detained in the Pueblo County Jail on charges related to a tax fraud scheme. He pled guilty to certain of these charges in September of 2008 and was later incarcerated at the Sterling Correctional Facility (SFC) on this conviction. During his incarceration in the Pueblo County Jail and later at SFC, Raul Caraveo orchestrated and carried out a second, nearly identical tax refund scheme with the assistance of fellow SCF inmates Eugene Chavez and Conrad Archuleta. Raul Caraveo was also assisted by his wife Sabrina Caraveo, Sabrina Caraveo's cousin Defendant Melanie Palumbo, Raul Caraveo's friend Pamila Lucero, Pamila Lucero's friend Christina Portillos, Raul Caraveo's friend Carolina Aragon, Nancy Guzman, and

others. Raul Caraveo, Pamila Lucero, Sabrina Caraveo, Eugene Chavez, Carolina Aragon, Christina Portillos, Conrad Archuleta, and Nancy Guzman are the eight named defendants in United States v. Caraveo, et al., 15-cr-00149-JLK.

The scheme was carried out in the following manner: Raul Caraveo obtained identifying information (names, dates of birth, social security numbers) from Colorado Department of Corrections (DOC) inmates he was incarcerated with and in some instances, the inmates' family members. The identifying information was used by Raul Caraveo to generate false Forms 1040A. All returns requested a tax refund that was generated by the Earned Income Tax Credit (EITC). Returns were filed for the tax years 2006 through 2012 and contained similar wages, deductions, and refund amounts for each year respectively. The only differing information per year was the primary and dependent's identifying information.

In a recorded call on December 11, 2008, Eugene Chavez asked the defendant to become involved in the tax refund scheme he and Raul Caraveo were operating from SCF. The defendant agreed to allow Eugene Chavez and Raul Caraveo use her home address on tax returns and for receipt of refund checks.

Specifically, as charged in the Information, on or about February 24, 2009, the Secretary of the Treasury received a false Form 1040A tax return claiming that a DOC inmate, allegedly living at the defendant's address, was entitled to a tax refund based upon wages he did not earn. This false return resulted in the issuance of a tax refund check in the amount of $2,491 that was mailed to the defendant's address.

Once a refund check was received, the defendant would either cash or deposit the check into her Wells Fargo Bank checking account and later withdrawal cash. Six returns are traced to the defendant seeking a total refund amount from the IRS of $15,480. Of those six, five refund checks issued in the total amount of approximately $13,541.49, which amount the defendant cashed or deposited into her account.

After the refund checks were cashed, Raul Caraveo gave instructions during recorded prison calls on how to divide the money. With respect to the checks in which the defendant is implicated, she was instructed to wire money to Raul Caraveo and/or Eugene Chavez, which she did on one occasion for Raul Caraveo and on multiple occasions for Eugene Chavez. The defendant was then instructed to give a majority of the remaining money to Sabrina Caraveo, and keep a portion for herself. The defendant maintains that from the scheme, she kept approximately $500 for herself.

During the spring of 2009, Raul Caraveo and Sabrina Caraveo suspected that the defendant kept a refund check for herself and cut her out of the scheme. The scheme continued without assistance from the defendant until May of 2014.

One refund check, in the amount of $3,587.21, did not reach the defendant until February of 2014 due to the IRS not having the defendant's current address. The defendant maintains she did not realize this check was generated as a result of the *Caraveo* tax fraud scheme in 2009, and believes one of the *Caraveo* defendants filled out the tax return associated with this refund check in her name. Accordingly, the defendant believes this amount should not be included in the intended loss amount, as set forth below.

## VI. SENTENCING COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. The appropriate Guidelines are §2T1.1 and §2T4.1 (Tax Table). The government asserts the base offense level is 12 (more than $12,500 but less than $30,000). The defendant maintains the base offense level is 10 (more than $5,000 but less than $12,500).

B. There are no victim-related, role-in-offense, obstruction, or multiple-count adjustments.

C. Pursuant to §3E1.1(a), provided the defendant does nothing inconsistent with accepting responsibility between the date of her plea and the date of sentencing, the defendant should receive the full two-level reduction for acceptance of responsibility. Based upon the government's calculation, the resulting total offense level would be 10; according to the defendant, it is 8.

D. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is ultimately determined by the Court.

|   |   |
|---|---|
|   | The information known to the parties, however, shows that the defendant has prior criminal history. The defendant's criminal history category is estimated to be Category III. |
| E. | Assuming the tentative criminal history facts above are accurate, the career offender/criminal livelihood/armed career criminal adjustments do not apply. |
| F. | The guideline range resulting from the government's estimated offense level of 10, and the tentative Criminal History Category III, is 10-16 months. The guideline range resulting from the defendant's estimated offense level of 8, and the tentative Criminal History Category III, is 6-12 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 0-6 months (bottom of Category I, offense level 8) to 12 months (statutory maximum). §5G1.1(c). |
| G. | Pursuant to guideline §5E1.2, assuming the government's estimated offense level of 10 is accurate, the fine range for this offense would be between $2,000 and $20,000, plus applicable interest and penalties. If the defendant's estimated offense level of 8 is accurate, the fine range for this offense would be between $1,000 to $10,000, plus applicable interest and penalties. |
| H. | Pursuant to §5D1.2(a)(3), if the court imposes a term of supervised release, that term shall be not more than one year. The parties understand that although the Court will consider the parties' estimate, the Court must make its own |

determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

## VII.   ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date:   7/27/15            _____
                           Melanie Palumbo
                           Defendant

Date:   7/27/2015          _____
                           Paula M. Ray
                           Attorney for Defendant

Date:   7-/28/15           _____
                           Martha A. Paluch
                           Assistant U.S. Attorney